UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SHENG-WEN CHENG,<br><br>                    Defendant. | No. 21-CR-261 (RA)<br><br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

Defendant Sheng-Wen Cheng moves for a sentence reduction under 18 U.S.C. § 3582(c) on grounds of compassionate release and Amendment 821 to the Sentencing Guidelines. For the reasons that follow, Cheng's motion for relief under Amendment 821 is denied but his motion for compassionate release is granted.

## BACKGROUND

Between 2017 and 2020, Cheng perpetrated several large frauds against individuals, companies and the federal government while living here on a student visa. In his initial scheme, Cheng lied to at least six potential investors in order to obtain $400,000 in investments in a sham cryptocurrency venture. He then launched a second fraud in which he promised over forty startups that he would perform due diligence on them—and potentially make an investment—if they paid him a "refundable" fee. Cheng never did the diligence and instead pocketed the $380,000 in fees he received. Finally, he procured $2.8 million in government-backed loans by submitting false applications for COVID relief during the pandemic.

In August 2020, Cheng was arrested on a criminal complaint charging him with multiple counts in connection with his various frauds. Cheng eventually pled guilty before then-District Court Judge Nathan to a four-count information charging him with major fraud against the United

States, bank fraud, securities fraud and wire fraud. As stipulated in the plea agreement, Cheng's Guidelines range was 78 to 97 months' imprisonment.

In August 2021, Judge Nathan sentenced Cheng to 72 months' imprisonment. In imposing sentence, Judge Nathan stressed the seriousness of Cheng's offenses, emphasizing that he "stole money from very real, very harmed individuals." Dkt. 35 ("Sent'g Tr.") at 50–51. Cheng was also ordered to forfeit certain property and to pay restitution of over $3 million to his victims. Judge Nathan also noted that Cheng, a citizen of Taiwan, would be deportable upon his release and had voluntarily agreed to his removal.

This case was reassigned from Judge Nathan to this Court in May 2022. After serving half of his sentence, Cheng filed a motion for a reduced sentence under 18 U.S.C. § 3582(c). *See* Dkt. 69. His motion argued that he was entitled to compassionate release due to the harsh conditions he had faced in prison, which included COVID lockdowns and outbreaks as well as an April 2022 incident where Cheng was stabbed in the head during a possibly racially motivated attack. *See id.* at 4–5. The Government opposed the motion, asserting that the conditions Cheng faced were not extraordinary and compelling and that the 18 U.S.C. § 3553(a) sentencing factors counseled against a reduced sentence. *See* Dkt. 74. The Court was not inclined to grant the motion at the time, as Cheng had not yet served a significant amount of his sentence. *See United States v. Goode*, No. 16-cr-529 (NSR), 2021 WL 3500012, at *3 (S.D.N.Y. Aug. 7, 2021) ("Multiple courts have denied compassionate release motions where defendants had yet to serve the bulk of the sentences.")

While Cheng's motion was pending, the U.S. Sentencing Commission passed Amendment 821 to the Sentencing Guidelines. As relevant here, Amendment 821 makes offenders who have zero criminal history points and meet certain other criteria eligible for a reduced sentence. *See*

*United States v. Baez*, 19-cr-463 (DLC), 2024 WL 1250583, at *2 (S.D.N.Y. Mar. 22, 2024). One of the prerequisites to eligibility is that "the defendant did not personally cause substantial financial hardship." U.S.S.G. § 4C1.1(a)(6). After this amendment took effect, the Probation Office submitted a supplemental Presentence Report stating that Cheng met all the statutory criteria—including the "financial hardship" element—and was eligible for the zero-point offender recalculation. *See* Dkt. 80 at 3.

In October 2024, the Court issued an order asking the parties to clarify whether, notwithstanding Cheng's motion for compassionate release, he was independently eligible for a sentence reduction under Amendment 821, which would have reduced his Guidelines range to 63 to 78 months. Dkt. 83. Cheng responded that he was. Dkt. 94. The Government did not dispute Cheng's eligibility, although it nonetheless urged the Court to decline to grant a reduction because the Section 3553(a) factors weighed against such relief. Dkt. 91. The Court then issued another order in January 2025 asking the parties to specifically address whether Cheng had "personally cause[d] substantial financial hardship," which as noted would disqualify him from eligibility under Amendment 821. Dkt. 97. Cheng again maintained that he was eligible. Dkt. 99. The Government stated that it was not "advocating [for] any enhancement related to 'substantial financial hardship'" because the parties had agreed in Cheng's plea agreement not to "include an increase for causing 'substantial financial hardship' as . . . provided for in U.S.S.G. § 2B1.1(b)(2)(A)." Dkt. 98 (citing Section 2B1.1(b)(2)(A), which provides an enhancement for offenses that involve ten or more victims and cause substantial financial hardship).

## LEGAL STANDARD

A district court may not reduce a sentence unless authorized by statute. *See* 18 U.S.C. § 3582(c). Section 3582(c) specifies two ways in which a sentence may be reduced. First, a court

3

may reduce a defendant's sentence if he was originally sentenced based on a Guidelines range that has since been reduced by retroactive changes to the Sentencing Guidelines, such as Amendment 821. *See United States v. Martin*, 974 F.3d 124, 136, 139 (2d Cir. 2020) (citing 18 U.S.C. § 3582(c)(2)).  Second, a court may reduce a sentence where (1) "extraordinary and compelling reasons warrant such a reduction," (2) the reduction "is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a), to the extent such factors apply.  18 U.S.C. § 3582(c)(1)(A). Following the November 2023 amendments to the Sentencing Guidelines, U.S.S.G. § 1B1.13 sets the standard for what constitutes "extraordinary and compelling reasons." *See United States v. Corbett*, No. 10-cv-184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023).

## DISCUSSION

Cheng's motion seeks a reduced sentence under both of these options, which the Court addresses in turn.

### I. Retroactive Guidelines Changes

Under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's sentence if his original Guidelines range has since been reduced by retroactive amendments to the Guidelines. *See Martin*, 974 F.3d at 136, 139 (citing 18 U.S.C. § 3582(c)(2)).  Amendment 821 is one such amendment. Among other changes, this provision provides a two-level decrease in offense level for defendants who have zero criminal history points and meet an exhaustive list of other criteria. *See* U.S.S.G. § 4C1.1(a)(1)–(11).  Most relevant here is paragraph (a)(6), which disqualifies from eligibility any defendant who "personally cause[d] substantial financial hardship."  *Id.* § 4C1.1(a)(6).  The Guidelines Commentary instructs district courts to assess such hardship based on factors including whether a victim became insolvent, filed for bankruptcy, suffered substantial loss of a retirement,

education, or other savings fund, had to make substantial changes to their employment or living arrangements (such as postponing retirement or relocating) or suffered substantial harm to their ability to obtain credit. *See id.* § 2B1.1 n.4(F); *see also id.* § 4C1.1(b)(3) (referring to § 2B1.1 Application Note 4(F) for applicable factors). "Substantial financial hardship might also be present where the number of victims is high, the amount lost is high, or the victims are particularly vulnerable." *United States v. Gowing*, No. 05-cr-782 (GBD), 2024 WL 3607112, at *2 (S.D.N.Y. July 30, 2024).

Cheng asserts that he did not cause substantial financial hardship, but the Court disagrees. Cheng defrauded at least forty-six individuals or companies out of more than $800,000, not to mention the $2.8 million he procured from the Small Business Administration through fraudulent COVID loans. And as his victims attested, the resulting losses had devastating impact on their lives and livelihoods, including by preventing individuals from purchasing family homes and obtaining credit, *see* Dkt. 28 at 12–13; Dkt. 74-2 at 2, forcing companies to lay off employees, *see* Dkt. 28 at 12–13, and driving others to the brink of collapse, *see id.* As Judge Nathan put it at sentencing, Cheng's "conduct destroyed lives, businesses, dreams, [and] families." Sent'g Tr. at 50–51. Because these harms amounted to substantial financial hardship, Cheng fails the criteria of paragraph (a)(6) and may not receive a reduction under Amendment 821.

## II.    Compassionate Release

Cheng may nonetheless obtain relief under 18 U.S.C. § 3582(c)(1)(A), which permits district courts to grant compassionate release to certain defendants. A defendant must show that (1) he has exhausted all administrative remedies with the Bureau of Prisons ("BOP"), (2) "extraordinary and compelling reasons warrant" a reduced sentence, (3) the reduction "is consistent with applicable policy statements issued by the Sentencing Commission," and (4) the

reduction is supported by the sentencing factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).  Effective November 1, 2023, Section 1B1.13 of the Guidelines defines which circumstances are "extraordinary and compelling."  *Corbett*, 2023 WL 8073638, at *3 (quoting U.S.S.G. § 1B1.13); *see also United States v. Feliz*, No. 16-cv-809 (VM), 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023).  This policy statement enumerates several circumstances that qualify as exceptional, including the defendant's medical circumstances, his age, his family circumstances and abuse he suffered at the hands of prison officials.  *See* U.S.S.G. § 1B1.13(b)(1)–(4).  Section 1B1.13 also provides a so-called "catchall" provision that authorizes district courts to grant compassionate release when the defendant presents a "combination of circumstances" that are "similar in gravity" to the enumerated cases.  *Id.* § 1B1.13(b)(5).  "This provision affords the district court significant discretion to determine when a reduction in sentence is warranted."  *United States v. Bello*, No. 13-cr-559 (NGG), 2024 WL 2962169, at *3 (E.D.N.Y. June 12, 2024) (collecting cases).

Here, there is no dispute that Cheng fully exhausted his administrative remedies by petitioning the BOP for compassionate release.  *See* Dkt. 69-2, 69-3.  The only inquiries are whether he meets the criteria of "extraordinary and compelling" circumstances set forth in U.S.S.G. § 1B1.13, and if so whether the 18 U.S.C. § 3553(a) factors support a reduced sentence.  The Court finds that Cheng meets both of these prerequisites.

*First*, his time while incarcerated presents the sort of "combination of circumstances . . . similar in gravity" to those enumerated in paragraphs 1B1.13(b)(1)–(4), which renders him eligible for compassionate release under the catchall provision.  U.S.S.G. § 1B1.13(b)(5).  For starters, in April 2022 Cheng was violently attacked and stabbed while sleeping in his cell in an assault that he believes was racially motivated.  The stabbing left him

6

with wounds to his head and back and serious facial lacerations that required him to be treated in a hospital. Making matters worse, Cheng was then placed in solitary confinement for the next five months out of concerns for his safety—conditions that, when paired with the assault, left him with lasting psychological damage.

Moreover, Cheng served the majority of his sentence during the COVID-19 pandemic. As Judge Nathan observed at his sentencing, this made the nature of his incarceration "extremely harsh" and considerably "[m]ore difficult" than carceral sentences at other times. Sent'g Tr. at 52. Other courts have observed the same, explaining that the "onerous [COVID] lockdowns and restrictions . . . have made sentences harsher and more punitive than would otherwise have been the case." *United States v. Hatcher*, No. 18-cr-454 (KPJ), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (internal quotation marks omitted) (collecting cases).

To be sure, neither of these circumstances strictly falls within the categories enumerated in paragraphs 1B1.13(b)(1)–(4). But these facts are precisely what the paragraph (b)(5) catchall is for: extraordinary and unique circumstances in which defendants were forced to endure unduly harsh conditions that make a reduced sentence appropriate. Indeed, while not technically qualifying by themselves, both of the circumstances Cheng faced—a violent, potentially racially motivated attack with lasting damage and harsh pandemic conditions—are "similar in gravity" to other enumerated circumstances. *See, e.g.*, U.S.S.G. § 1B1.13(b)(1)(B)–(C) (defendant suffering from serious physical or medical condition that substantially diminishes ability to self-care); *id.* § 1B1.13(b)(1)(D) (defendant housed at correctional facility affected by ongoing outbreak of disease); *id.* § 1B1.13(b)(4) (defendant suffered serious bodily injury at direction of correctional officer). The Court thus finds that the paragraph (b)(5) catchall applies, which makes Cheng eligible for a reduced sentence.

7

*Second*, the Section 3553(a) factors support such a reduction here. There is no doubt that Cheng's offense was serious and caused substantial harm that upended lives. Many of his victims are still suffering from the financial devastation caused by Cheng's actions, and the Court remains sympathetic to their ongoing hardship. But for the purposes of this motion, it is important that Cheng's offense was not violent, and nothing about his behavior since then indicates he would be a "danger to any other person or to the community." *See* U.S.S.G. § 1B1.13(a)(2). In fact, during his incarceration Cheng has received only two small infractions for possessing another inmates' paperwork and refusing a pat search, neither of which were particularly serious or suggest any propensity for violence or similar harm. *See* Dkt. 91-1 (reflecting that the only discipline received was loss of commissary for seven days and loss of email for fourteen). "[T]he absence of any disciplinary infraction related to violence or drug use[] demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community." *United States v. Yu*, No. 90-cr-47 (AT), 2020 WL 6873474, at *5 (S.D.N.Y. Nov. 3, 2020). The risk of such danger is further minimized by the fact that he will be deported upon his release, as courts have routinely found. *See, e.g.*, *United States v. Molina Acevedo*, No. 18-cr-365 (LGS), 2020 WL 3182770, at *3 (S.D.N.Y. June 15, 2020); *United States v. Qadar*, No. 00-cr-603 (ARR), 2021 WL 3087956, at *12 (E.D.N.Y. July 22, 2021). Cheng, moreover, has no prior criminal history, which further weighs in favor of a reduction. *See United Stats v. Bang*, No. 19-cr-213 (LJL), 2024 WL 1051582, at *5 (S.D.N.Y. Mar. 11, 2024).

Finally, while Cheng had served only half of his sentence when this motion was filed, he has now served the bulk of it. *See Goode*, 2021 WL 3500012, at *3. His projected release date is September 27, 2025, meaning he has completed 88 percent of his ultimate sentence, which other courts have found more than enough to justify early release in appropriate cases. *See e.g.*, *United*

*States v. Resto*, No. 08-cr-757 (DC), 2021 WL 1109467, at *3 (S.D.N.Y. Mar. 23, 2021) (granting early release when 92 percent of sentence served); *United States v. Campbell*, No. 09-cr-119 (ARR), 2023 WL 7013388, at *1 (E.D.N.Y. Oct. 25, 2023) (reducing sentence to 80 percent of current sentence); *United States v. Hernandez Frometa*, No. 18-cr-660 (AKH), 2020 WL 6132296, at *4 (S.D.N.Y. Oct. 19, 2020) (granting early release when over 60 percent of sentence served). And as already discussed, that time in prison has been particularly harsh, on account of the pandemic and violence he faced, on top of the many months he spent in solitary confinement through no fault of his own. Paired with the fact that Cheng appears to pose no risk of violence or similar danger to the community, the Court thus finds that a sentence of time served is consistent with the sentencing factors set forth in Section 3553(a).

## CONCLUSION

For these reasons, the Court grants Cheng's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His previously imposed sentence is reduced to time served and he shall be transferred into Immigration and Customs Enforcement ("ICE") custody for deportation to Taiwan.

SO ORDERED.

Dated:   February 21, 2025
         New York, New York

                                                    _____
                                                    Ronnie Abrams
                                                    United States District Judge